## HUTCHINSON *et al. v.* BLUMBERG.

*(Circuit Court, N. D. Illinois. June 8, 1892.)*

**1. TRADE-MARKS—WHAT WILL BE PROTECTED—STAR.**
The word "Star," and the symbol of a star, adopted and used during many years by manufacturers of shirts, waists, underwear, and furnishing goods, to mark and designate their goods, in combination with the words "Star Shirts," and other words describing the articles, so that the goods become well known by such mark, and by the designation of "Star Goods," constitute a valid trade-mark.

**2. SAME—INFRINGEMENT.**
Such trade-mark is infringed by marking similar goods with a star and crescent, making the star so prominent that such goods may also be designated as "Star Goods," and purchasers may be readily deceived into the belief that the goods were made by the proprietors of the trade-mark, even though the star so used is not of the color usually employed for the trade-mark, and is a five-pointed star, while that in the trade-mark is uniformly six-pointed.

**3. SAME—INJUNCTION.**
The facts that the infringer of a trade-mark, on being notified of his infringement, told his customers to erase the trade-marks from their goods, and had since gone out of business, are not ground for denying an injunction to the true owner of the trade-mark, where every step of the suit for an injunction and accounting has been contested by the infringer, and he has put the complainants to the expense of proving every fact necessary to establish their right and his infringement.

In Equity. Bill by Gardiner S. Hutchinson, Henry B. Pierce, Ira Cole, and Thomas S. Morison against Jacob J. Blumberg for infringement of trade-mark, praying an injunction and an accounting. Decree for complainants.

*B. F. Watson* and *Cornelius V. Smith,* for complainants.
*Elbert C. Ferguson,* for defendant.

BLODGETT, District Judge. The complainants in this case, who were copartners doing business under the style and firm name of "Hutchinson, Pierce & Co.," having their principal place of business in the city of New York, charge that the firm of T. A. Morison & Hoyt, in or about the year 1859, was engaged in the manufacture of shirts, waists, underwear, and furnishing goods, and, to designate the goods of their manufacture, adopted and employed as their device and trade-mark the word "Star," and with the form and symbol of a star to represent the word "Star," and also the words, "Star Shirts," and the device or figure of a star in combination with the words "Star Shirts," and other words describing the goods as "* shirt" and "* waist;" that complainants, through a series of mesne assignments, have become and now are the successors of said firm of T. A. Morison & Hoyt, and have also become the owners of said trade-mark, and of the exclusive right to use the same; that the goods manufactured by complainants and their predecessors have been extensively sold, and have become well known by said trade-mark and

the designation of "Star Goods," and that said goods so designated by said trade-mark have a wide and high reputation for excellence, and are much sought after in the trade; that defendant is engaged in the manufacture and sale of shirts, waists, underwear, and furnishings, substantially like those manufactured and sold by complainants, and greatly resembling the same, and has marked and identified said goods by a star, symbol, or device like that used by complainants, and that the use of such symbol on the goods of defendant has the effect of causing purchasers and users of such goods to believe that they are purchasing and using goods manufactured by complainants; that defendant marks and designates his goods with the word "Star," and symbol of a star and crescent, and so marks the packages and boxes containing said goods, making the star so prominent and conspicuous as to attract attention, and deceive purchasers in the belief that the goods so made by defendant are the "Star Goods" of complainants, thereby deceiving the public, and greatly wronging and injuring the complainants.    The answer denies the complainants' right to the use of the star as a trade-mark, and also denies infringement.

The proof shows conclusively that the firm of T. A. Morison & Hoyt adopted the star both in 'word and symbol as their trade-mark as early as 1859, and that the business of said firm has passed by transfer through a number of succeeding firms until about 1883 it came to the complainants as the successors of the firm in a direct line from said T. A. Morison & Hoyt, and that the star trade-mark has been used by the said firm of T. A. Morison & Hoyt and its successors, and is now used by complainants upon the same kind and class of goods as that to which it was applied by the original firm which first devised and adopted it.    It may also be taken as abundantly proven, if not conceded upon hearing, that the defendant, for a year or more before the commencement of this suit, had made and sold shirts, waists, and underwear upon which he had placed a star and crescent, but such prominence had been given to the star, both in word and symbol, in the marking of the defendant's goods and packages, as to readily deceive inexperienced persons, purchasers, and users into the belief that they were obtaining the genuine and well-known "Star Goods" of the complainants.

It is contended on the part of the defendant that, as he has combined the figure of a crescent with a star in marking his goods, there is no infringement.    But I have no doubt, from the proof in the case, that the defendant does by the use of the star in his mark, although combined with a crescent, infringe upon the complainants' rights, because, as is charged in the bill and as the proof shows, he makes the star so prominent a feature in the mark as to enable him, or those dealing in his goods, to impose them upon the inexperienced and unwary as "Star Goods,"—the use of the word and symbol "Star" giving a color of right to designate the defendant's goods as "Star Goods," by which complainants' goods have come to be widely and favorably known.

It is also contended on the part of the defendant that complainants are only entitled to the use of a red star, because the proof shows that complainants' goods were mainly marked with a red star, or the star was im-

pressed in red color upon complainants' goods. But the complainants have not confined themselves, as the proof shows, exclusively to the use of a red star, but have designated their goods so that they became known to the trade as "Star Goods" without reference to the color; hence I think there is no force in this position on the part of the defendant. The defendant also contends that he has not infringed, because he has used a five-pointed star, while the complainants' star has been usually and uniformly a six-pointed star. There is no force in this objection, because no purchaser would be expected to stop and count the points upon a star in order to determine whether they were the goods of the complainants or not. It is enough that the goods are marked with a star, and are known or called by the designation of "Star Goods."

It is also further urged in behalf of the defendant that, on being notified by the complainants that he was infringing their trade-mark, he gave notice to persons to whom he had sold star and crescent goods to erase the star from the marks upon the goods, and that he has since gone out of business, and therefore no decree for any injunction should be awarded against him. If the proof had shown that the defendant, at once, on being notified of his infringement, had, in good faith, abandoned the use of complainants' trade-mark, his conduct in that respect might be considered by the court in fixing the terms of the decree. But the record shows that the defendant has contested every step of the case. He has put the complainants to the expense of proving every fact necessary to establish their right to the use of the trade-mark in question, and also the fact of his (defendant's) infringement, and even, only a very few days before the case was brought on for final hearing, put in additional proof upon the point of complainants' right to the use of the word and symbol "Star." As I have already said, the defendant's trade mark shows the star as the prominent feature, although there is a crescent alongside the star. He prints the word "Trade-Mark" in the same relation to the star as it is printed and shown in the complainants' mark, and locates his mark in the same place upon the garment. These facts show, I think, most manifestly a clear intention upon the part of the defendant to avail himself of the celebrity of the complainants' goods for the purpose of making a market for his own. It is very evident, I think, that any person disposed to take advantage of a customer, having the defendant's goods in his store, could, on inquiry being made for "Star Goods," which is the common designation of complainants' goods, or "Star Shirt," or "Star Waist," or "Star Underwear," hand to the customer defendant's goods, and say, "These are the 'Star Goods,' are known as such," and impose on a customer by reason of this trade-mark, the presence of the crescent cutting no special figure in the purchaser's mind. Very many cases have been decided by the courts where analogous questions have arisen, such as that the use of the words "Perry Davis' Vegetable Pain Killer" is an infringement upon the trade-mark of "Perry Davis' Pain Killer," (*Davis* v. *Kendall*, 2 R. I. 566;) "Charter Oak" and a sprig of oak leaves, and "Charter Oak," omitting the sprig of oak leaves, (*Filley* v. *Fassett*, 44 Mo. 173;) "The Hero" and "The Heroine," (*Rowley* v. *Houghton*, 2 Brewst. 303; "Ris-

ing Sun Stove Polish" and "Rising Moon Stove Polish," (*Morse v. Worrell*, 9 Amer. Law Rev. 368;) "Apollinaris Water" and "London Apollinaris Water," in different kinds of bottles and different kinds of labels, (*Apollinaris Co. v. Norrish*, 33 Law T. [N. S.] 242.)

In *Amoskeag Manuf'g Co. v. Spear*, 2 Sandf. 608, it was said:

"An injunction ought to be granted whenever the design of a person who imitates a trade-mark, be his design apparent or proved, is to impose his own goods upon the public as those of the owner of the mark, and the imitation is such that the success of the design is a probable, or even possible, consequence."

A decree may be prepared finding that the complainants have a valid trade-mark as alleged in their bill, and that defendant has infringed the same, and for an accounting.