43 C.C.P.A.(Patents)

**In re W. C. VON CLEMM.**

**Tariff Commission Appeal No. 6.**

United States Court of Customs
and Patent Appeals.

Dec. 8, 1955.

Alexander Kahan, New York City, for Von Clemm.

Richard Russell Wolfe, Chicago, Ill., for Linde Air Products Co.

Warren E. Burger, Asst. Atty. Gen., and John R. Benney, Sp. Asst. to the Atty. Gen., for the United States.

Before O'CONNELL, Acting Chief Judge, and JOHNSON, WORLEY, COLE, and JACKSON (retired), Judges.

WORLEY, Judge.

This matter is before us on appeal by Werner C. Von Clemm from the findings and recommendation of the United States Tariff Commission, two members dissenting, pursuant to the provisions of section 337 of the Tariff Act of 1930, 19 U.S.C.A. § 1337. The findings and recommendation were made after an investigation by the Commission of a complaint instituted by Linde Air Products Company, a division of Union Carbide and Carbon Corporation, charging Von Clemm and others with unfair methods of competition and unfair acts in the importation of certain synthetic star rubies and sapphires, allegedly corresponding to those described and made in accordance with the process claimed in Linde's United States Patent No. 2,488,-507.

The pertinent portions of the applicable section of the Tariff Act are as follows:

"Sec. 337.   Unfair Practices In Import Trade.

"(a) Unfair Methods of Competition Declared Unlawful.—Unfair methods of competition and unfair acts in the importation of articles into the United States, or in their sale by the owner, importer, consignee, or agent of either, the effect or tendency of which is to destroy or

substantially injure an industry, efficiently and economically operated, in the United States, or to prevent the establishment of such an industry, or to restrain or monopolize trade and commerce in the United States, are hereby declared unlawful, and when found by the President to exist shall be dealt with, in addition to any other provisions of law, as hereinafter provided.

"(b) Investigations of Violations by Commission.—To assist the President in making any decisions under this section the commission is hereby authorized to investigate any alleged violation hereof on complaint under oath or upon its initiative.

"(c) Hearings and Review.—The commission shall make such investigation under and in accordance with such rules as it may promulgate and give such notice and afford such hearing, and when deemed proper by the commission such rehearing, with opportunity to offer evidence, oral or written, as it may deem sufficient for a full presentation of the facts involved in such investigation. The testimony in every such investigation shall be reduced to writing, and a transcript thereof with the findings and recommendation of the commission shall be the official record of the proceedings and findings in the case, and in any case where the findings in such investigation show a violation of this section, a copy of the findings shall be promptly mailed or delivered to the importer or consignee of such articles. Such findings, if supported by evidence, shall be conclusive, except that a rehearing may be granted by the commission and except that, within such time after said findings are made and in such manner as appeals may be taken from decisions of the United States Customs Court, an appeal may be taken from said findings upon a question or questions of law only to the United States Court of Customs and

Patent Appeals by the importer or consignee of such articles. * * *

* * * * * *

"(e) Exclusion of Articles from Entry.—Whenever the existence of any such unfair method or act shall be established to the satisfaction of the President he shall direct that the articles concerned in such unfair method or acts, imported by any person violating the provisions of this Act, shall be excluded from entry into the United States, and upon information of such action by the President, the Secretary of the Treasury shall, through the proper officers, refuse such entry. The decision of the President shall be conclusive.

"(f) Entry Under Bond.—Whenever the President has reason to believe that any article is offered or sought to be offered for entry into the United States in violation of this section but has not information sufficient to satisfy him thereof, the Secretary of the Treasury shall, upon his request in writing, forbid entry thereof until such investigation as the President may deem necessary shall be completed; except that such articles shall be entitled to entry under bond prescribed by the Secretary of the Treasury."

■ As set forth above, the jurisdiction of this court in cases such as the present one is limited to questions of law. Findings of fact by the Commission may, therefore, be reviewed only to the extent of determining whether the record contains substantial evidence to support them.

■■ The statute here under consideration provides broadly for action by the Tariff Commission in cases involving "unfair methods of competition and unfair acts in the importation of articles", but does not define those terms nor set up a definite standard. As was noted in our decision in In re Northern Pigment Co., 71 F.2d 447, 22 C.C.P.A., Customs, 166, T.D. 47124, the quoted language is

broad and inclusive and should not be held to be limited to acts coming within the technical definition of unfair methods of competition as applied in some decisions. The importation of articles may involve questions which differ materially from any arising in purely domestic competition, and it is evident from the language used that Congress intended to allow wide discretion in determining what practices are to be regarded as unfair.

In the present case the Tariff Commission found as facts that the Synthetic Crystals Division of Linde Air Products Company, hereinafter referred to as Linde, is an efficiently and economically operated industry in the United States; that synthetic star stones of the kind described and claimed in Linde's patent, No. 2,488,507, and made by the process described and claimed in that patent, have been imported into the United States by or on behalf of Von Clemm "in ever-increasing quantities" since 1951 "and are sold at prices below those at which Linde sells its stones;" that such practices involve unfair methods of competition and unfair acts in the importation of such stones; and that the tendency of such unfair methods and acts is to injure substantially Linde's industry.

On the basis of those findings, the Commission made the following recommendation:

> The Tariff Commission recommends that the President direct the Secretary of the Treasury to instruct customs officers to exclude from entry into the United States until and including November 14, 1966, synthetic star sapphires and synthetic star rubies (whether imported separately or as part of any article) described in, or made by the process disclosed in United States Letters Patent No. 2,488,-507, except where the importation is made under license of the registered owner of said United States Letters Patent.

It is not disputed that Linde is the owner of Patent No. 2,488,507, issued November 15, 1949, for "Synthetic Star Rubies and Star Sapphires and Process for Producing Same." In our opinion the holding by the Tariff Commission that Linde's Synthetic Crystals Division is an industry efficiently and economically operated in the United States is amply supported by the record. There is nothing in the statute which requires that an industry must be of any particular size, or that more than one company must be involved before the protection provided by the statute may be invoked.

We have repeatedly held that in cases of this character, involving alleged unfair acts in connection with a patented article or process, the validity of the patent or patents involved may not be questioned by the Tariff Commission nor by this court on appeal therefrom, but that a regularly issued patent must be considered valid unless and until a court of competent jurisdiction has held otherwise. Frischer & Co., Inc., v. Bakelite Corporation, 39 F.2d 247, 17 C.C.P. A., Customs, 494, T.D. 43964; In re Orion Co., 71 F.2d 458, 22 C.C.P.A., Customs, 149, T.D. 47123; and In re Northern Pigment Co., supra. Since no such holding of invalidity is alleged here, Linde's patent must be regarded as valid.

The record clearly shows that Von Clemm has imported a number of synthetic star stones into the United States for sale, and the Tariff Commission found that such stones fell within the description of the article claims of Linde's patent and were made by the process described in the process claims thereof.

The first finding is amply supported by the testimony of Burdick, one of the inventors named in Linde's patent, who explained in detail how the language of claim 19 was met by the imported stones. Moreover, Von Clemm, in answer to the question "I would like to ask you whether the German synthetic star sapphire or

ruby that you import falls within the description [claim 19]?," replied "Yes, sir."

As to the finding that Von Clemm's stones were made by the method described in the process claims of the patent, the evidence is less conclusive. Burdick admittedly did not know by direct evidence how the stones were made, but gave as his conclusion, based on tests which he described, that they must have been made by the patented process. Burdick's testimony, coupled with Von Clemm's failure to explain how the imported stones were made, or to enter anything more than a general denial based on information and belief of the allegation that his stones were made in the manner described in the patent, was considered by the Commission to be sufficient to conclude that they were so made. Under such circumstances we are unable to agree with appellant that such conclusion is not supported by substantial evidence.

Von Clemm testified that he obtained a copy of Linde's patent early in 1950 and, as already noted, admitted that the stones imported by him answered the description of an article claim of that patent. In view thereof, and of the previously mentioned holdings of the Commission with respect to such stones, we conclude that the Commission's holding of unfair methods of competition and unfair acts in the importation of the stones is a valid exercise of the authority delegated by the Congress and is supported by substantial evidence.

While the record does not show that Linde has as yet been *substantially* damaged by Von Clemm's action, in our opinion it sufficiently supports the holding that such actions have a *tendency* to injure substantially Linde's Synthetic Crystals Division, within the meaning of section 337 of the Tariff Act of 1930.

It is urged by Von Clemm that the Tariff Commission should have refrained from acting in this case and that this court should also refrain from acting since the questions of validity of Linde's patent and infringement thereof by Von Clemm's stones are involved in a suit now pending between appellant and Linde in the United States District Court for the Southern District of New York. We are aware of no statute, however, which would justify, much less require, this court to ignore the provisions of section 337, supra, which we must necessarily regard as requiring timely disposition of appeals arising thereunder.

As pointed out in In re Orion Co., supra, any order which may be issued by the President may be corrected in the event of a subsequent holding of invalidity of a patent. Moreover, under section 337, supra, the President may, in his discretion, provide for entry of the disputed merchandise under bond pending, *inter alia*, final determination of the issues of validity and infringement.

Appellant criticizes the recommendation of the Commission on the ground that it would in effect place upon the customs officials the duty of interpreting Linde's patent and determining whether imported stones correspond to the patent claims or were made by the process described therein. However, the language of section 337(e), supra, seems clearly to contemplate an order of the type recommended. We note that recommendations for orders similar to the present one were made by the Tariff Commission in the Frischer, Orion, and Northern Pigment cases, supra.

In our opinion the record fully supports, as a matter of law, the findings and recommendation of the Tariff Commission. Accordingly, the decision appealed from is affirmed.

Affirmed.

JACKSON, J., retired, recalled to participate.

COLE, Judge.

I respectfully dissent from the decision of the majority in this case.

An analysis of what has happened in the case will indicate the primary reason for my disagreement. In effect, a patent owner, upon a showing that a product lit-

erally described by his claims has been imported and sold in the United States, has obtained from the Tariff Commission a recommendation for an order that all articles which infringe his patent, or are made by a process which infringes his patent, be excluded from the United States.

As far as I can see from a reading of the majority opinion, there are no circumstances under which an owner of a United States patent could not get—without submitting to a validity contest—such a recommendation, whenever he can show that literally infringing articles are being imported and sold. There has been no inquiry into the validity of the patent, nor into the prior art to limit the claims. There has been no finding of *actual* injury to the patent owner; the mere fact that there have been substantial sales has been found sufficient to establish a *tendency* to injure sufficient to support an exclusion order. There has been no finding of fraud or deceit on the part of the importer. So far as appears from this case, all that is necessary to get an exclusion recommendation from the Tariff Commission is (1) that there be an owner of a United States Patent; and (2) that there be importations and sales of an article which infringes (either by itself or by the process by which it was made) the literal wording of the patent claims. It might be wondered if step (2) is really necessary, since the recommended order (quoted in the majority opinion) still leaves to the customs officials the duty of determining whether each imported article infringes the patent. Apparently, the question of infringement would have to be determined anew on each importation, and, if so, there would seem to be no reason to undergo the expense of a hearing before the Tariff Commission. The Commission could simply recommend the exclusion of any article which infringed, or was made by a process which infringed, the patent. Then, if there were actually no infringing articles being imported, no one would be harmed by the order.

Carrying the majority opinion to its logical conclusion, the only function of the Tariff Commission is to determine whether the complaining American manufacturer has a patent. In other words, it seems fair to conclude that section 337 has been construed to mean that any article which infringes, or is made by a process which infringes, the claims of a United States patent, may be barred from importation into the United States, upon the mere application of the patent owner. While Congress undoubtedly has the power to enact such a law, certainly, if such a meaning was intended, Congress would have said so in such clear language as the situation deserves. It seems to me that a result such as has been reached in this case was clearly outside the contemplation of Congress in enacting the statute.

While the obvious and irreconcilable consequences of the decision are sufficient upon which to base this dissent, I here briefly point out some of the difficulties overlooked by the majority opinion.

First, we are encountered with the question of whether mere literal infringement without more is an unfair method of competition or an unfair act in importation. In domestic infringement cases, it has been generally held that infringement alone is insufficient to support a count of unfair competition. See Unit Const. Co. v. Huskey Mfg. Co., D.C., 241 F. 129, and R. R. Donnelley & Sons Co. v. Haber, D.C., 43 F.Supp. 456. While this court has sustained recommendations of the kind here involved in the Frischer, Orion, and Northern Pigment cases cited in the majority opinion, there are important differences between those cases and the instant case. In the first two—Frischer and Orion—definite holdings of "palming off" as well as infringement were made, and the recommendations were clearly based in part at least on such holdings. While the Northern Pigment case also involved facts other than infringement, there are statements in the court's opinion therein which suggest that infringement alone

might be enough to establish unfair competition. This latter case so far as it relates to process claims was overruled in Amtorg Trading Corp., 75 F.2d 826, 22 C.C.P.A., Customs, 558, T.D. 47583, in a lengthy opinion which discusses unfair methods of competition but does not seem to rule definitely on whether infringement alone is one of them.

It can be said, therefore, that this court has not yet approved a recommendation under section 337 based on infringement alone. At best there is merely some *dicta* tending toward that conclusion, but other contrary *dicta* are also present in the same group of decisions. I prefer to embrace the statement of Chief Judge Garrett in his very able dissenting opinion in the Frischer case that he knew of no case in which infringement alone had been held to constitute an unfair method of competition.

Second, there is the problem of the validity of the patent, and the scope of the claims. It must be admitted that our earlier decisions have held that the Tariff Commission is not free to inquire into the validity of the patent. However, that does not necessarily mean that the Tariff Commission should not look at the prior art to determine the proper scope of the claims for the purpose of resolving the question of infringement. Furthermore, it is to be seriously questioned whether, in the circumstances of this case where no actual or impending damage has been shown, the Tariff Commission should not have suspended its proceedings to await the outcome of the declaratory judgment suit filed by importer (referred to in the majority opinion and now pending in the Southern District of New York). Its action in proceeding with this rather extraordinary remedy when the actual damage to the patent owner could be adequately recompensed in the declaratory judgment suit, seems extremely dubious, if not an abuse of discretion. The outcome of that case would conceivably result in complete justice to all parties. Indeed, since in that case the entire question of validity and infringe-

ment could be litigated and disposed of, the outcome of that case would be more likely to secure complete justice than these proceedings. If that case should be resolved favorably to complainant here, the decision should be of inestimable value to the Tariff Commission in the event the section 337 proceeding were still deemed desirable.

Third, it is to be questioned whether the phrase in section 337 that there must be a "tendency * * * to * * * substantially injure an industry" has not received a broader interpretation than the statute contemplated. In this case no actual loss of sales has been shown. Instead, mere conjectural and conceivable loss of sales has been held to have a tendency to substantially injure an industry. From the context, coupled as the phrase is with "to destroy," it would seem that Congress contemplated a crippling injury, one which verged on the brink of destruction, rather than, as here indicated, a mere competitive nuisance.

Fourth, it is to be noted that the "industry" protected here is the industry of making synthetic star rubies and sapphires—which industry is apparently conducted solely by the patent owner, Linde Air Products Co. Normally, one manufacturer does not make an industry. Perhaps the inquiry made by the Tariff Commission should have been whether the importations had a tendency to substantially injure the domestic synthetic *gem* industry, rather than considering only complainant's business. Even admitting that the sales of the imported article have a tendency to substantially injure Linde, the sole American producer of star rubies and sapphires, it does not follow that the domestic synthetic gem industry as a whole is substantially injured.

At this time I do not wish to do more than note my disagreement with the conclusion reached by the majority, and to indicate some of the possible underlying misapprehensions which may have been the cause of the error. That there is er-

ror, I have no doubt, as the result reached here is so inconsistent with the wording of the statute as to be plainly wrong.

O'CONNELL, Judge, concurs in this dissent.